UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KIYEL JUSTIN JOHNSON,

        Plaintiff,                     Case No. 2:25-cv-8

v.                                     Honorable Robert J. Jonker

S. KOWALSKI et al.,

        Defendants.
_____/

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

      Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Assistant Resident Unit Manager/Prisoner Counselor S. Kowalski, Sergeant/Lieutenant Unknown Borgen, and Corrections Officer Unknown Collrin in their personal and official capacities.

In his amended complaint, Plaintiff alleges that on November 4, 2024, he became aware of the fact that his phone PIN was not working. (Amd. Compl., ECF No. 1, PageID.30.) Later that day, Plaintiff was called out for Jpay and saw Defendant Kowalski but could not get her attention. (*Id.*, PageID.30–31.) Later, Defendant Kowalski came to Prisoner Maxwell's cell #226, and Plaintiff told her that his phone was "on restriction." (*Id.*, PageID.31.) Defendant Kowalski stated that she was only in the unit for Prisoner Maxwell and left the area. (*Id.*)

On November 5, 2024, Prisoner Counselor Wilson, not a defendant, came to Plaintiff's cell #243 to review him on a Notice of Intent to Conduct an Administrative Hearing for a 180-day phone restriction. Prisoner Counselor Wilson asked Plaintiff if he wanted to "take the days" or if he wanted a hearing, and Plaintiff indicated that he wanted the hearing because he had not done anything wrong. (*Id.*) Later that day, Plaintiff filed a step I grievance on Defendant Collrin for writing a false misconduct on Plaintiff because Plaintiff had pleaded guilty to an unrelated misconduct. (*Id.*)

Plaintiff's allegations are not entirely clear regarding the misconducts and Notice of Intent(s) at issue in this case. Plaintiff claims that he was found not guilty of a misconduct for "destruction or misuse of property" and Notice of Intent phone restriction written by Defendant Collrin, but that he is seeking judicial review of a Notice of Intent misconduct administered by

2

Defendant Borgen, who "had knowledge that Plaintiff was innocent but failed to perform a known duty and instead retaliated against Plaintiff." (*Id.*, PageID.29.)

On November 6, 2024, Defendant Borgen came to Plaintiff's cell to review the class II misconduct for "destruction or misuse of property" with Plaintiff. (*Id.*, PageID.31.) Defendant Borgen asked Plaintiff if he wanted to take the 5 days loss of privileges, because Defendant Collrin, who was the reporting officer, already had Plaintiff on camera passing the incentive phone to prisoner Stokes #758642 who locked in Cell #242 on October 19, 2024. (*Id.*) Plaintiff responded that they must have him confused with another prisoner because he did not have another prisoner's phone PIN and had never used another prisoner's phone. (*Id.*, PageID.32.)

Plaintiff also asked Defendant Borgen what a prior unrelated misconduct report has to do with this misconduct. (*Id.*) Defendant Borgen replied that if Plaintiff did not plead guilty, he was going to end up in a "deeper hole" because they already knew that Plaintiff had used PINs belonging to Prisoners Adkins and Stokes to make phone calls. (*Id.*) Defendant Borgen said that if he had to waste his time looking at the surveillance system camera footage, Plaintiff might end up going to segregation. (*Id.*) Plaintiff continued to assert that he was not guilty. (*Id.*) Prisoner Stokes #758642 then yelled to Defendant Borgen and stated that it had been him using the phone, not Plaintiff, and to check the camera footage. (*Id.*)

Defendant Borgen told Plaintiff that if he was found guilty on the Notice of Intent for a 180-day phone restriction, he would automatically be found guilty of the misuse or destruction of property misconduct, but that Plaintiff could "keep playing games" if he wanted. (*Id.*) Plaintiff then asked Defendant Borgen to please do a proper investigation and rerun the surveillance camera footage. (*Id.*) Plaintiff also asked Defendant Borgen to please inform Defendant Collrin that he had him confused with another prisoner and to turn Plaintiff's phone back on, especially since

3

Plaintiff's phone had been improperly turned off before he was reviewed on the Notice of Intent. (*Id.*)

Defendant Borgen stated that it was out of his control and that Plaintiff would have to kite the hearings officer, but that Plaintiff needed to learn his lesson and maybe when he was found guilty, he would think twice before passing the incentive phone to another prisoner. (*Id.*, PageID.33.) Defendant Borgen stated, "You think it's over but it's just the beginning for you and your neighbor Stokes." (*Id.*)

On November 14, 2024, Defendant Kowalski stopped at Plaintiff's cell door for a hearing on the Notice of Intent, stating that Plaintiff abused his phone privileges by "breaking his slot plugging the phone and making calls without staff authorization and using Prisoner(s) Stokes #758642 and Prisoner Adkins #307529 phone." (*Id.*) Plaintiff indicated that he wanted a hearing and Defendant Kowalski stated that Plaintiff should have taken the 80-day phone restriction that had been offered. (*Id.*) Defendant Kowalski stated that Plaintiff had already been caught giving the incentive phone to Prisoner Stokes and now he thought that he could go ahead and use other prisoners' PINs to phone without authorization. (*Id.*) Defendant Kowalski found that Plaintiff was guilty and upheld the Notice of Intent for the 180-days phone restriction written by Defendant Collrin, stating that Plaintiff was seen on camera opening his cell door top slot, plugging the incentive phone in, and using prisoner Stokes and prisoner Adkins phone PINs. (*Id.*, PageID.33–34.)

Plaintiff again protested that it was not him on camera and Prisoner Stokes spoke up and stated that he had been the one using the incentive phone. (*Id.*, PageID.33) Defendant Kowalski stated, "Well, Johnson just will have to suffer the consequences for your mistake then because I'm

4

not throwing the misconduct out." (*Id.*) Plaintiff wrote a step I grievance on Defendants for upholding a retaliatory misconduct. (*Id.*, PageID.34.)

As stated above, Plaintiff asserts that he was found not guilty of the misconduct written by Defendant Collrin. (*Id.*, PageID.29.) On November 17, 2024, Defendant Kowalski came to Prisoner Stokes cell and stated: "You, Plaintiff, and Prisoner Adkins think you can wiggle out this phone restriction I will have [Defendant] Collins rewrite the misconduct report so don't think its over." (*Id.*, PageID.34.) Defendant Kowalski then walked toward Plaintiff and told him that he would be found guilty at the hearing on the destruction or misuse of property misconduct. (*Id.*) Finally, Defendant Kowalski told Prisoner Adkins that he was not going to turn their phones back on. (*Id.*)

Plaintiff spoke to other prison officials, including Sergeant Mukka and Resident Unit Manager Nurkula, not named as defendants, about the matter. On November 18, 2024, Plaintiff filed a step I grievance regarding the phone restriction after being found not guilty of the destruction or misuse of property misconduct. (*Id.*)

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory, punitive, and nominal damages, as well as unspecified equitable relief. (*Id.*, PageID.35–38.)

**II.      Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

5

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Eighth Amendment**

Plaintiff asserts that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

7

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As set forth above, Plaintiff claims that he was falsely subjected to a 180-day phone restriction as a result of a retaliatory Notice of Intent.

> Limitations on phone privileges, however, while unpleasant, do not amount to denials of basic human needs. *See Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *5 (W.D. Mich. Mar. 3, 2021) (collecting cases). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Hardin-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

*Turner v. Schroeder*, No. 2:24-CV-98, 2024 WL 3342301, at *12 (W.D. Mich. July 8, 2024). Accordingly, his Eighth Amendment claims premised upon limitations on phone privileges will be dismissed.

Plaintiff also vaguely asserts that the act of subjecting him to retaliatory accusations of misconduct and failing to properly investigate somehow violated the Eighth Amendment. However, because Plaintiff fails to allege that Defendants deprived him of "essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement," he fails to state an Eighth Amendment claim against them. *Rhodes*, 452 U.S. at 348.

B.    **Fourteenth Amendment Procedural Due Process**

As noted above, Plaintiff claims that Defendant Collrin wrote a false misconduct and Notice of Intent on him, but states that he was found not guilty. However, Plaintiff claims that he is seeking judicial review of a Notice of Intent misconduct administered by Defendant Borgen, who "had knowledge that Plaintiff was innocent but failed to perform a known duty and instead

8

retaliated against Plaintiff." (*Id.*, PageID.29.) Consequently, it is not clear what restrictions were ultimately imposed on Plaintiff, other than temporary phone restrictions.

Plaintiff claims that he was subjected to a false misconduct for "destruction or misuse of property," which is a Class-II misconduct. *See* MDOC Policy Directive 03.03.105, Attachment B, ¶ 427. To the extent that Plaintiff is seeking to assert a due process claim related to the Class-II misconduct ticket, such a claim lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).

First, no matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is serving multiple indeterminate sentences, the longest of which is a 3 to 30 year sentence for the crime of second-degree home invasion. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile. aspx?mdocNumber= 807918 (last visited Apr. 29, 2025). Although there are incentives for serving time without misconducts, those incentives do not impact the duration of the sentence under *Sandin*.

In general, the MDOC no longer rewards prisoners for serving time "misconduct free." Instead, prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, are given "disciplinary time" when they are found guilty of a major misconduct. *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.34. Plaintiff is incarcerated for crimes he committed

9

on April 24, 2012, and September 15, 2018. Therefore, he is subject to disciplinary time with regard to his indeterminate sentences. Mich. Comp. Laws § 800.34.

Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of his misconduct convictions would not rise to the level of an atypical and significant hardship.

Moreover, Plaintiff states that he was found not guilty of the destruction or misuse of property misconduct. (ECF No. 7, PageID.29.) Therefore, it is clear that Plaintiff suffered no sanction with respect to this misconduct ticket.

Plaintiff also appears to assert that his due process rights were violated in relation to the imposition of a phone restriction prior to Plaintiff being reviewed on the Notice of Intent. However, a 180-day phone restriction would not violate Plaintiff's right to procedural due process. *Allen v. Alexsander*, No. 2:16-cv-245, 2017 WL 2952929, at *5 (W.D. Mich. July 11, 2017) (*citing Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (a 6-month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would trigger the protection of the Due Process Clause)).

Accordingly, because Plaintiff has failed to identify a liberty interest impacted by any misconduct proceedings, the Court finds that Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim.

### C. First Amendment Retaliation

Plaintiff asserts that the conduct of Defendants Collrin, Borgen, and Kowalski in relation to the Notice of Intent to impose a phone restriction and the destruction or misuse of property misconduct was motivated by a desire to retaliate against him.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on

the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action.

The allegations in Plaintiff's complaint do not support a conclusion that Defendants were motivated by a desire to retaliate against him for any protected conduct. Instead, Defendants' comments and behavior indicate that they believed that Plaintiff was guilty and were frustrated by Plaintiff's refusal to accept his guilt because they did not find his claims to be credible.

Initially, the Court notes that in his amended complaint, Plaintiff fails to clearly identify any protected conduct for which he was retaliated against. Instead, Plaintiff vaguely asserts that he received the misconduct for destruction or misuse of property and was subjected to a phone restriction because he had pleaded guilty to an earlier misconduct ticket.

As noted above, Plaintiff states that on November 5, 2024, after being reviewed on the Notice of Intent to impose a phone restriction, he filed a step I grievance on Defendant Collrin for writing a false misconduct on Plaintiff because Plaintiff had pleaded guilty to an unrelated misconduct. (Amd. Compl., ECF No. 1, PageID.31.) Plaintiff was reviewed on the misconduct for "destruction or misuse of property" by Defendant Borgen on November 6, 2024. (*Id.*) Defendant Borgen told Plaintiff that he could be seen on camera passing a phone to prisoner Stokes, and Plaintiff responded that it must have been another prisoner. (*Id.*, PageID.31–32.)

Throughout the review and hearing process, Plaintiff continued to assert that he was not guilty, and that the individual seen on camera was another prisoner. In addition, Plaintiff claims that prisoner Stokes claimed responsibility for using the incentive phone. (*Id.*, PageID.32.) However, in their exchanges with Plaintiff, Defendants repeatedly asserted that Plaintiff could be seen on camera passing the incentive phone to prisoner Stokes, and that they already knew that

13

Plaintiff had used PINs belonging to Prisoners Adkins and Stokes to make phone calls. (*Id.*) Defendant Borgen accused Plaintiff of "playing games" when Plaintiff insisted that Defendants were mistaken about his identity. (*Id.*) Plaintiff continued to assert that Defendants were mistaken about what was on camera and that they were not conducting a proper investigation and Defendants responded by insisting that there was evidence of Plaintiff's guilt and dismissing his protests. (*Id.*)

Defendant Borgen told Plaintiff that he needed to learn his lesson and maybe when he was found guilty, he would think twice before passing the incentive phone to another prisoner. (*Id.*, PageID.33.) Defendant Kowalski stated that Plaintiff had abused his phone privileges by "breaking his slot plugging the phone and making calls without staff authorization and using Prisoner(s) Stokes #758642 and Prisoner Adkins #307529 phone" and that Plaintiff had already been caught giving the incentive phone to Prisoner Stokes and now he thought that he could go ahead and use other prisoners' PINs to phone without authorization. (*Id.*)

None of the facts alleged in Plaintiff's amended complaint support an inference that the phone restriction or the misconducts were motivated by Plaintiff's protected conduct. To the contrary, the "adverse actions" alleged by Plaintiff preceded Defendants' knowledge of any protected conduct and, thus, logically could not have motivated the adverse actions. The facts alleged by Plaintiff instead support the inference that Defendants actions with regard to the phone restriction and the misconduct reports were motivated by Defendants belief that Plaintiff had abused his phone privileges. Therefore, Plaintiff's retaliation claims are properly dismissed for failure to state a claim on which relief may be granted.

### D. State Law

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924

(1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Plaintiff invokes this Court's supplemental jurisdiction over his claim that Defendant Collrin filed a false report in violation of Mich. Comp. Laws § 750.411a, as well as Plaintiff's appeal of his phone restriction under Mich. Comp. Laws § 791.255. (Am. Compl., ECF No. 7, PageID.35–36.)

> The "false report" section of the Michigan Penal Code provides:
>
> Except as otherwise provided in subsections (2) and (3), a person who intentionally makes a false report of the commission of a crime, or intentionally causes a false report of the commission of a crime to be made, to a peace officer, police agency of this state or of a local unit of government, 9-1-1 operator, or any other governmental employee or contractor or employee of a contractor who is authorized to receive reports of a crime, knowing the report is false, is guilty of a crime . . . .

Mich. Comp. Laws § 750.411a(1). Plaintiff has failed to allege that any of the Defendants made a false report of the commission of a crime. Accordingly, Plaintiff has filed to allege the necessary elements of a "false report" violation. Moreover, "Michigan Penal Code § 750.411a . . . does not confer a private right of action." Brown v. Barnes, No. 5:16-cv-12362, 2018 WL 4926323, at *9 n.6 (E.D. Mich. June 5, 2018), *R&R adopted*, 2018 WL 4907706 (Oct. 10, 2018). Accordingly, Plaintiff has failed to state a claim on which relief may be granted.

Plaintiff's invocation of the appeal provisions of Mich. Comp. Laws § 791.255 fails to state a claim on which relief may be granted. That statutory section is one of six that authorize the hearings division within the MDOC, set forth the procedures for hearings and decisions, and specify the available review of decisions. Mich. Comp. Laws §§ 791.251–791.256. In *Meeks v. Warner*, No. 2:19-cv-10247, 2020 WL 8812884 (E.D. Mich. Dec. 30, 2020), the United States District Court for the Eastern District of Michigan explained: "Mich. Comp. Laws § 791.255

15

provides for judicial review of MDOC Hearings Division decisions or orders. '[A]n application for direct review in the circuit court' may be filed '[w]ithin 60 days after the date of delivery or mailing of naotice of the decision on the motion or application for the rehearing, if the motion or application is denied . . . .'" *Id*., at *3.

The statute does not permit review of Hearings Division decisions by this Court. Indeed, the United States Supreme Court is vested with exclusive jurisdiction over appeals from final state-court judgments. *Lance v. Dennis*, 546 U.S. 459 (2006); *see also Durham v. Haslam*, 528 F. App'x 559, 563 (6th Cir. 2013) (noting that the rule that federal district courts may not review state court decisions is "based on the idea that federal appellate jurisdiction over a state court decision lies exclusively with the Supreme Court"). Accordingly, Plaintiff's request that this Court review the phone restriction fails to state a claim on which this Court may grant relief.

The Court will exercise supplemental jurisdiction over Plaintiff's state law claims. The claims will be dismissed because Plaintiff has failed to state a claim on which relief may be granted.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith. Should Plaintiff


appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   May 2, 2025                              /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge